**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ELIZABETH SLAUGHTER, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>HEALTH CARE SERVICE CORPORATION,<br><br>*Defendant.* | Case No. 1:24-cv-00560<br><br>(Removed from Cook County Circuit Court, Case No. 2023CH07893)<br><br>Date action filed: August 31, 2023 |

**NOTICE OF REMOVAL PURSUANT TO 28 U.S.C. §§ 1441(a) AND 1453**
**BY DEFENDANT HEALTH CARE SERVICE CORPORATION**

Defendant Health Care Service Corporation ("HCSC"), through its undersigned counsel, hereby removes the above-captioned action from the Cook County Circuit Court of the State of Illinois to the United States District Court for the Northern District of Illinois. Removal is done pursuant to 28 U.S.C. § 1441(a), governing the removal of civil actions, and 28 U.S.C. § 1453, governing the removal of class actions. "[A] copy of all process, pleadings, and orders served upon" HCSC in the state action (which, to-date, is only the Complaint) are filed as exhibits herewith. *See* 28 U.S.C. § 1446(a).

1

## I. INTRODUCTION[1]

1. Plaintiff filed the Complaint on August 31, 2023. *See* Ex. A. The Complaint alleges that HCSC "is a customer-owner health insurer," that HCSC "acquired, collected, and stored Plaintiff's and Class Members' [Protected Health Information (PHI)]/[Personally Identifiable Information (PII)] and/or financial information," and that on June 21, 2023, "unauthorized third-party cybercriminals gained access to Plaintiff's and Class Members' PHI/PII and financial information." *Id.* ¶¶ 1, 2, 4.

2. The alleged data breach was part of a larger "cyber incident that exploited a vulnerability in a widely used file transfer tool, MOVEit, which is owned by Progress Software." *MOVEit Global Security Incident*, https://www.maine.gov/moveit-global-data-security-incident (last visited Jan. 22, 2024) (stating that this incident had "a global impact, affecting thousands of organizations").

3. This case is one of numerous cases that have been filed concerning the MOVEit vulnerability.[2] Most of those actions have been transferred by the United States Judicial Panel on Multidistrict Litigation, in the case captioned *IN RE: MOVEit Customer Data Security Breach Litigation*, No. 1:23-md-3083 (J.P.M.L.).

---

[1] If any question arises about the propriety of removal, HCSC respectfully requests an opportunity to submit briefing and present oral argument in support of removal before an order resolves the question. Nothing about this removal waives (or should be construed to waive) any of HCSC's available rights, arguments, defenses, or objections, including as to lack of service. HCSC respectfully reserves the right to amend or supplement this notice.

[2] This includes another complaint against HCSC, captioned *Sanchez v. Health Care Services Corporation*, 1:23-cv-15857 (N.D. Ill.). The complaint in the *Sanchez* action includes the same 192,231 individuals in the purported *Slaughter* class and pleads that "[t]his Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ('CAFA'), 28 U.S.C. § 1332(d)(2), because this is a class action in which the matter in controversy exceeds the sum of $5,000,000, the number of class members exceeds 100, and at least one Class member is a citizen of a state different from Defendants." Compl., *Sanchez v. Health Care Servs. Corp.*, 1:23-cv-15857 (N.D. Ill.), ECF No. 1 at ¶¶ 25, 33.

4. In this action, Plaintiff seeks to represent a class comprising "[a]ll individuals within the United States of America whose PHI/PII and/or financial information was exposed to unauthorized third-parties as a result of the data breach experienced by Defendant on June 21, 2023." Compl. ¶ 30. Plaintiff pegs the size of the class at "approximately 192,231 individuals." *Id.* ¶ 5. She asserts four causes of action: (1) negligence, (2) breach of implied contract, (3) breach of the implied covenant of good faith and fair dealing, and (4) unjust enrichment. *Id.* ¶¶ 88–140. Among other remedies, Plaintiff, on behalf of herself and all other members of the Class, seeks an award of actual, nominal, and consequential damages, pre-judgment interest, and attorneys' fees and costs, as well the disgorgement of HCSC's profits. *Id.* ¶¶ 140, Prayer for Relief.

## II. REMOVAL IS PROPER UNDER CAFA

5. "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a); *see also id.* § 1453(b).

6. The Class Action Fairness Act ("CAFA") vests district courts with "original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000," the putative class numbers 100 or more members, and in which "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(1)–(2), (5)–(6). This action satisfies each of CAFA's requirements.

7. **Covered Class Action.** This action meets CAFA's definition of a class action: "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B); *see* 28 U.S.C. § 1453(a). Plaintiff alleges

that "[t]his action has been brought and may properly be maintained as a class action under Illinois Rule of Civil Procedure 735 ILCS 5/2-801." Compl. ¶ 33. As the Seventh Circuit has explained, "735 ILCS 5/2–801" is "the state equivalent" of Rule 23 of the Federal Rules of Civil Procedure. *LG Display Co. v. Madigan*, 665 F.3d 768, 771 (7th Cir. 2011). Plaintiff has therefore filed a "class action" within the meaning of CAFA.

8. **The Putative Class Consists of At Least 100 Members.** Plaintiff seeks to represent a class of "[a]ll individuals within the United States of America whose PHI/PII and/or financial information was exposed to unauthorized third-parties as a result of the data breach experienced by Defendant on June 21, 2023," and pegs the number of such individuals as "approximately 192,231." *Id.* ¶¶ 5, 30. Accordingly, there are at least 100 persons in the putative class. *See* 28 U.S.C. § 1332(d)(5)(B).

9. **The Parties Are Minimally Diverse.** CAFA requires minimal diversity, meaning that at least one putative class member must be "a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). A class member is any person "who fall[s] within the definition" of the proposed class. *Id.* § 1332(d)(1)(D). Corporations, for their part, are deemed to be citizens of the states where they are incorporated or organized, and where they have their principal places of business. 28 U.S.C. § 1332(c)(1), (d)(10).

10. HCSC "is a business with its principal location at 300 E. Randolph St., Chicago, IL 60601, and is, upon information and belief, an Illinois corporation."[3] Compl. ¶ 27. Plaintiff is also from Illinois but seeks to represent a class consisting of all affected "individuals within the

---

[3] Though Plaintiff alleges that HCSC is a corporation, Compl. ¶ 27, it is actually a mutual legal reserve company. For purposes of diversity, however, "HCSC [is] considered to be an Illinois corporation." *Shattuck Pharmacy Mgmt., P.C. v. Prime Therapeutics, LLC*, 2021 WL 2667518, at *3 (W.D. Okla. June 29, 2021); *see also Farag v. Health Care Serv. Corp.*, 2017 WL 2868999, at *13 (N.D. Ill. July 5, 2017) (citing cases).

4

United States of America." *Id.* ¶¶ 13, 30. Upon information and belief, this includes citizens from states other than Illinois. *See, e.g.*, *Data Breach Notifications*, OFFICE OF THE MAINE ATTORNEY GENERAL, https://apps.web.maine.gov/online/aeviewer/ME/40/cc67ac09-5e7a-4e24-91ff-3477a2a85b32.shtml (stating that Maine residents are included among the group of 192,231). CAFA's diversity requirements are thus satisfied, because "at least one class member is diverse from at least one defendant." *Sabrina Roppo v. Travelers Com. Ins*, 869 F.3d 568, 578 (7th Cir. 2017).

   11. **The Amount In Controversy Exceeds $5 Million.** CAFA mandates that the monetary claims of class members are aggregated to determine if the amount in controversy exceeds the required "sum or value of $5,000,000." 28 U.S.C. § 1332(d)(2), (d)(6). A "defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" of $5 million. *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S 81, 89 (2014). The estimate is deemed controlling unless it is a "legally impossible" outcome. *ABM Sec. Servs., Inc. v. Davis*, 646 F.3d 475, 478 (7th Cir. 2011).

   12. HCSC denies the allegations of wrongdoing and states that Plaintiff's claims are meritless.[4] Nevertheless, what matters here is that Plaintiff is seeking more than $5 million in damages. Although she does not put a dollar figure to her claimed damages in the Complaint, the federal action (*see* note 2 *supra*) purports to represent the same 192,231 individuals, and claims that "the matter in controversy exceeds the sum of $5,000,000." Compl., *Sanchez v. Health Care Services Corporation*, 1:23-cv-15857 (N.D. Ill.), ECF No. 1 at ¶ 25.

---

[4]  *See Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 (9th Cir. 2015) ("Even when defendants have persuaded a court upon a CAFA removal that the amount in controversy exceeds $5 million, they are still free to challenge the actual amount of damages in subsequent proceedings and at trial. This is so because they are not stipulating to damages suffered, but only estimating the damages that are in controversy.").

13. Moreover, Plaintiff asserts a laundry list of damages: "including actual, nominal, and consequential damages," "equitable relief," "injunctive relief," and "attorney's fees, costs, and litigation expenses." Compl. at Prayer for Relief. Plaintiff also "seek[s] an Order of this Court requiring Defendant to refund, disgorge and pay as restitution any profits, benefits and other compensation obtained by Defendant from its wrongful conduct and/or the establishment of a constructive trust from which Plaintiff and Class Members may seek restitution." *Id.* ¶ 140. With 192,231 class members (predominantly insureds who have paid premiums to Defendant and its divisions, Compl. ¶ 49), an average recovery of $26.01—which is well within the confines of Plaintiff's pleading—would clear the CAFA threshold.

### III. REMOVAL IS PROPER UNDER FEDERAL-QUESTION JURISDICTION

14. "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "[I]n certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues. The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law." *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312, (2005) (citation omitted).

15. Federal jurisdiction over a state-law claim is proper when a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal–state balance. *Gunn v. Minton*, 568 U.S. 251, 258 (2013). All four factors are present here.

16. **First**, Plaintiff's claims raises "significant federal issues," *Grable*, 545 U.S. at 312, because she expressly alleges violations of the Federal Trade Commission Act ("FTC Act") and

the Health Insurance Portability and Accountability Act ("HIPAA").[5] Such claims will require significant construction and interpretation of federal statutes. Plaintiff devotes an entire four-page section outlining what she says were and are HCSC's requirements under these two federal laws. Compl. ¶¶ 62–80. Plaintiff alleges that HCSC "had and continues to have obligations created by HIPAA, [and] applicable federal . . . law," such as an obligation "to comply with the HIPAA Privacy Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ('Standards for Privacy of Individually Identifiable Health Information'), and Security Rule ('Security Standards for the Protection· of Electronic Protected Health Information'), 45 C.F.R. Part 160 and Part l 64, Subparts A and C." *Id.* ¶¶ 48, 63. Likewise, Plaintiff claims that HCSC "was also prohibited by the [FTC Act] from engaging in 'unfair or deceptive acts or practices in or affecting commerce.'" *Id.* ¶ 71 (quoting 15 U.S.C. § 45(a)(1)–(2)).

17. As a result, Plaintiff's claims will require a reviewing court to analyze and interpret both HIPAA and the FTC Act. Plaintiff's claims therefore raise a "significant federal issue." *Grable*, 545 U.S. at 312.

18. **Second**, these federal issues are "actually disputed," because HCSC denies all the claims asserted against it, including those that raise federal issues. *See Gunn*, 568 U.S. at 259 (holding that the federal issue was "actually disputed" where the defendants denied the plaintiff's allegations on the federal issue).

19. **Third**, the federal issues raised by Plaintiff are "substantial" in the sense that the issues are important to the "federal system as a whole." *Id.* at 260. For example, Plaintiff's claims ask whether HCSC violated HIPAA and the FTC Act. Cyber incidents impacting insurers with

---

[5] This is particularly true for Plaintiff's first cause of action: negligence. *See* Compl. ¶¶ 88–114. Federal jurisdiction would also vest for all other causes of action pled under state law by dint of supplemental jurisdiction. 28 U.S.C. § 1367(a).

nationwide membership, such as HCSC, that result in disclosure of data protected under federal law, raise federal issues, not merely state or local ones—which is further demonstrated in Plaintiff's statement that "[t]he Federal Trade Commission (the 'FTC') has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an 'unfair practice' in violation of the FTC Act." Compl. ¶ 71 n.1. And as a recent executive order by President Biden's explained, "remediation of cyber incidents is a top priority [of the federal government] and essential to national and economic security." Executive Order on Improving the Nation's Cybersecurity (May 12, 2021), https://www.whitehouse.gov/briefingroom/presidential-actions/2021/05/12/executive-order-on-improving-the-nations-cybersecurity/. Cases such as this one demand the uniformity federal law affords in determining what constitutes reasonable cybersecurity measures in the face of malicious, persistent threat actors, which are at times backed by foreign states. The federal interest in enforcing cybersecurity measures in the context of ransomware attacks is therefore substantial.

20. **Fourth**, the federal issues are capable of resolution in federal court without disrupting the federal–state balance. This requirement focuses "principally on the nature of the claim, the traditional forum for such a claim, and the volume of cases that would be affected." *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 316 (2d Cir. 2016). Asserting jurisdiction over this case will not tip the balance of federal–state judicial responsibilities. Data breach class actions are routinely heard in federal court—just like the *Sanchez* action against HCSC in the Northern District of Illinois (*see* note 2 *supra*) and the cases consolidated by the United States Judicial Panel on Multidistrict Litigation (*see* ¶ 3 *supra*). Moreover, state courts are not the traditional forum for hearing the narrow set of data breach cases alleging negligence claims that are predicated on the FTC Act—which does not provide for a

8

private right of action. *Mid Am. Title Co. v. Chicago Title Ins.*, 1989 WL 39780, at *2 (N.D. Ill. Apr. 18, 1989) ("FTC Act § 45(b) authorizes only the FTC to proceed against FTC Act violators— the courts have uniformly held no private cause of action is allowed.").

21. Accordingly, the Court has federal-question jurisdiction.

### IV. THE OTHER REQUIREMENTS FOR REMOVAL HAVE BEEN MET

22. **Removal is Timely.** Under 28 U.S.C. § 1446(b) and Rule 6 of the Federal Rules of Civil Procedure, this removal is timely because HCSC removed "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 348 (1999) (receipt *and* proper service required to start 30-day clock for removal, not "mere receipt of the complaint unattended by any formal service"). HCSC agreed to accept service on January 22, 2024. Removal is therefore timely.

23. **Venue is Proper.** Under 28 U.S.C. §§ 84(a) and 1441(a), venue is proper in the United States District Court for the Northern District of Illinois, because this Court embraces the Cook County Circuit Court of the State of Illinois, where this action was pending at the time of removal.

### V. CONCLUSION

24. The requirements for removal have been met; this case therefore "belongs in federal court." *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008).

Dated: January 22, 2024 　　　　　　　　　　MAYER BROWN LLP

　　　　　　　　　　　　　　　　　　By:　/s/ *Michael A. Olsen*
　　　　　　　　　　　　　　　　　　　　Michael A. Olsen
　　　　　　　　　　　　　　　　　　　　71 South Wacker Drive
　　　　　　　　　　　　　　　　　　　　Chicago, IL 60606
　　　　　　　　　　　　　　　　　　　　Tel: (312) 701-7120
　　　　　　　　　　　　　　　　　　　　molsen@mayerbrown.com

　　　　　　　　　　　　　　　　　　　　Joseph De Simone*
　　　　　　　　　　　　　　　　　　　　Adam S. Hickey*
　　　　　　　　　　　　　　　　　　　　Luc W. M. Mitchell*
　　　　　　　　　　　　　　　　　　　　1221 Avenue of the Americas
　　　　　　　　　　　　　　　　　　　　New York, NY 10020
　　　　　　　　　　　　　　　　　　　　Tel: (212) 506-2500
　　　　　　　　　　　　　　　　　　　　jdesimone@mayerbrown.com
　　　　　　　　　　　　　　　　　　　　ahickey@mayerbrown.com
　　　　　　　　　　　　　　　　　　　　lmitchell@mayerbrown.com

　　　　　　　　　　　　　　　　　　　　* *pro hac vice* applications
　　　　　　　　　　　　　　　　　　　　forthcoming pending transfer

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 22, 2024, the foregoing was electronically filed with the Clerk of the Court using the e-filing system and that copies of the foregoing instrument were sent by email and first-class U.S. mail to counsel for plaintiff at the addresses and email addresses below:

**LAUKAITIS LAW LLC**
Kevin Laukaitis (PA ID 321670)
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, PR 00907
T: (215) 789-4462
klaukaitis@laukaitislaw.com

Joseph J. Two (ARDC# 06256789)
1753 W. Winnemac Ave.
Chicago, IL 60640
T: (312) 342-6740
josephtwo@gmail.com

*Attorneys for Plaintiff*

                                              */s/ Michael A. Olsen*
                                              Michael A. Olsen